2026 IL App (1st) 241419
No. 1-24-1419

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| KEVIN McDUNN, WILLIAM McDUNN, KATHLEEN McDUNN, and TIMOTHY McDUNN, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) | No. 2022 CH 00959 |
| v. | ) ) | |
| SUSAN McDUNN, | ) ) | The Honorable Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment and opinion.

## OPINION

¶ 1    In this action under the Uniform Partition of Heirs Property Act (Heirs Property Act) (755 ILCS 75/1 *et seq.* (West 2022)), defendant Susan McDunn appeals from the circuit court's order apportioning attorney fees and expenses that resulted in her owing a net of $2,753.43 to plaintiffs, the denial of her corresponding motion to reconsider that apportionment, and the denial of her motion to strike certain portions of plaintiffs' submissions. For the following reasons, we reject defendant's arguments and affirm.

¶ 2                          BACKGROUND

¶ 3        This appeal arises from a partition action under the Heirs Property Act concerning real estate that the parties inherited from their late mother. Defendant and the four plaintiffs (Kevin McDunn, William McDunn, Kathleen McDunn, and Timothy McDunn) are siblings. Their mother, Evelyn McDunn (Evelyn), owned a townhome in Palos Hills, Illinois.

¶ 4        In November 2014, Evelyn executed a "Transfer on Death Instrument" (TODI) stating her intent that, upon her death, the townhome would be conveyed in equal shares to each of her five children, the parties herein. Evelyn died in March 2017.

¶ 5        The four plaintiffs herein subsequently expressed their desire to sell the townhome, but defendant was the lone sibling who declined to consent. In January 2022, the plaintiffs attempted to persuade defendant to agree to have a real estate agent list the property for sale, but defendant did not agree.

¶ 6        On February 3, 2022, this action commenced when Kevin filed a complaint for partition by sale. The original complaint named Kevin as the sole plaintiff and defendant as the sole defendant; it identified the three other siblings (William, Kathleen, and Timothy) as "interested parties."

¶ 7        The complaint attached the TODI and pleaded that the parties had an undivided interest in the property as tenants in common. It pleaded that the partition action was brought "for the common benefit of the parties" to secure their respective interests in the property and that division in kind was unfeasible. The complaint sought an order for partition by sale of the property and disbursement of the sale proceeds in *pro rata* shares, subject to an accounting and "compensatory adjustments" according to principles of equity.

¶ 8        Defendant, who is an attorney and former circuit court judge, appeared *pro se* at all times in the trial court proceedings, although she consulted with an outside attorney. In May 2022,

defendant filed a motion arguing that the complaint was deficient because William, Kathleen, and Timothy were not named as defendants. On June 6, 2022, the court entered an order finding that those three siblings were necessary parties and directing Kevin to file an amended complaint that identified them as either plaintiffs or defendants.

¶ 9      On June 21, 2022, an amended complaint was filed that identified four siblings (Kevin, William, Kathleen, and Timothy) as plaintiffs; defendant remained the lone defendant. On July 26, 2022, defendant filed an answer in which she admitted that all parties had equal undivided interests in the property and that she had refused to sign an agreement to list the property with a realtor.

¶ 10      In September 2022, plaintiffs moved for partial summary judgment. In opposition, defendant did not dispute that the property was co-owned by all siblings in equal shares and that it was "heirs property" subject to the Heirs Property Act. However, she opposed the motion because, *inter alia*, she did not believe the property was in condition to be sold and because its fair market value had not been established. In the same submission, defendant asked that the entire petition be dismissed with prejudice because plaintiffs' amended complaint did not cite any statutory provision.

¶ 11      On January 31, 2023, the trial court issued a ruling in which it found no genuine issue of fact that each party held a one-fifth ownership interest in the property as tenants in common and that partition in kind is unfeasible. However, the court found that under the Heirs Property Act, it could not resolve the dispute until the property's fair market value was determined. Thus, citing section 6 of the Heirs Property Act, it denied summary judgment as premature. See *id.* § 6 (specifying that the court shall order an appraisal to determine fair market value, unless the parties agree to the value or if the court determines that the evidentiary value of an appraisal is outweighed by the cost of the appraisal).

¶ 12　　　　In February 2023, an independent appraiser assessed the fair market value of the property as $210,000.

¶ 13　　　　On March 7, 2023, defendant filed a motion for summary judgment in which she argued the amended complaint was deficient because it "does not cite any statute at all as a basis for the relief that they seek." She acknowledged that the Heirs Property Act provides for partition by sale but claimed plaintiffs' failure to specifically cite that statute rendered the complaint deficient and entitled her to summary judgment.

¶ 14　　　　In March 2023, plaintiffs filed a second amended complaint with a single count for partition by sale, specifically referencing the Heirs Property Act. That pleading also incorporated the February 2023 appraisal and attached it as an exhibit.

¶ 15　　　　The parties subsequently agreed that the fair market value of the property was $200,000; the court adopted that value in an order dated June 27, 2023. At that time, it directed plaintiffs to send the required notice to defendant of her right to buyout plaintiffs' interest in the property. See *id.* § 7(a) (after the determination of fair market value, "the court shall order the plaintiff to send notice to the parties that any cotenant except a cotenant that requested partition by sale may buy all the interests of the cotenants that requested partition by sale").

¶ 16　　　　On August 21, 2023, defendant filed a notice of her election to purchase the plaintiffs' interests in the property. On September 24, 2023, the court entered an order reflecting that the defendant's purchase price was $160,000 "for a buyout of all four of the cotenant/Plaintiffs' interests." The court ordered her to pay that sum by December 4, 2023.

¶ 17　　　　Defendant did not pay the purchase price by December 4, 2023. On December 8, 2023, plaintiffs filed a "motion for partition expenses and attorneys' fees" pursuant to section 12 of the Heirs Property Act. *Id.* § 12 (the court shall "apportion the costs of the proceedings, including a

reasonable fee for the plaintiff's attorney, among the parties in interest in the action, as the court deems just and equitable"). Plaintiffs alleged that, as defendant had "consistently attempted to delay resolution of this matter," plaintiffs incurred court costs and attorney fees totaling $22,866.88. Plaintiffs attached a corresponding fee affidavit and billing records from their counsel.

¶ 18    Plaintiffs additionally averred that since the February 2022 filing of the partition, they had incurred expenses to maintain the property (including insurance, utilities, homeowners' association fees, and repairs) totaling $30,126.85. Plaintiffs asked that their attorney fees and their share of expenses should be offset against the value of defendant's ownership interest in the property.

¶ 19    On December 12, 2023, (eight days after defendant missed the deadline to tender funds to purchase the property) plaintiffs filed a motion to appoint a real estate broker and list the property on the open market.

¶ 20    On December 14, 2023, plaintiffs filed an amended motion for partition expenses and an amended motion for attorney fees and costs, in which they averred that defendant's delay caused them to incur fees of $23,100. Of that amount, plaintiffs sought an award of $19,110 for attorney fees, as well as costs of $966.88. In these motions, plaintiffs urged that due to defendant's acts and omissions since their mother's passing in 2017, the townhome had been sitting vacant for nearly seven years, and that defendant undermined "every good faith attempt" to settle the matter.

¶ 21    On December 18, 2023, defendant filed a motion for summary judgment on the ground that plaintiffs' complaint contained an error in the last three digits of the townhome's property index number (PIN). The complaint stated the PIN was 23-11-401-036, but the correct PIN was 23-11-401-109. On that basis, defendant argued that plaintiffs' complaint was deficient and she was entitled to judgment in her favor.

¶ 22    The parties appeared before the court on December 18, 2023, at which time the court granted plaintiffs' oral motion to amend the complaint to reflect the correct PIN number. In a written order, the court noted that defendant was not prejudiced by such amendment, as the parties agreed which property was the subject of this action. The court set a January 2024 hearing date on plaintiff's motion to appoint a real estate broker to list the property for sale.

¶ 23    On January 2, 2024, defendant filed various objections to plaintiffs' motion to appoint a real estate broker and list the property for sale. She sought an extension of the buy-out period, citing her discovery of the incorrect PIN number and filing of a new complaint. She also claimed a new determination of the property's fair market value was warranted because prior appraisals, including that from February 2023, were "outdated."

¶ 24    On January 22, 2024, defendant filed a motion for attorney's fees. Although she had always appeared *pro se*, defendant stated she had consulted with a probate attorney, Cary Lind, in connection with this matter. She attached corresponding invoices from Lind for fees totaling $5,256.25. Defendant claimed she was entitled to recover that sum from plaintiffs under section 12 of the Heirs Property Act, which provides that: "If any defendant interposes a good and substantial defense to the complaint, the party or parties making such substantial defense shall recover their costs against the plaintiff according to justice and equity." *Id.* Defendant asserted that she had made "a good and substantial defense to each of the three complaints" filed in this action, citing her May 2022 motion regarding the naming of certain siblings as "interested parties," her March 2023 motion for summary judgment based on the complaint's failure to cite a statute, and her December 2023 motion for summary judgment based on the incorrect PIN.

¶ 25    On January 24, 2024, the court granted defendant a "final extension" of her buyout period to February 7, 2024. She was directed to deposit $160,000 with plaintiffs' attorney, with such funds to be held in trust until further order of court.

¶ 26    Defendant failed to tender the funds by the February 7 deadline. The following day, plaintiffs filed a motion to sell the property on the open market. Shortly thereafter, defendant tendered a cashier's check in the amount of $160,000 to buyout plaintiffs' interests in the property. On February 15, 2024, the court acknowledged the payment and stated that a judicial deed would issue. The deed was issued on March 7, 2024.

¶ 27    After the buyout, the parties continued to dispute the proper apportionment of attorney fees and expenses pursuant to section 12 of the Heirs Property Act, with defendant and plaintiffs blaming each other for the delayed resolution of the matter and seeking reimbursement of their expenses and fees from each other.

¶ 28    On March 7, 2024, defendant filed a "motion for expenses and credits" in which she alleged that shortly after this action was filed in 2022, she proposed that the parties lease the townhome, but plaintiffs refused. She claimed that had plaintiffs agreed, the property would have generated a profit and expenses would have been avoided. Thus, she averred she was entitled to reimbursement from plaintiffs for her 20% portion of expenses to maintain the property, which she calculated to be $2,615.08. She also sought a $3,993.74 credit for a tax refund that defendant obtained through her efforts for year 2017 taxes, as well as a credit of $1,811.06 corresponding to certain work on the property (window repair and painting) done without her consent. She also sought "her 20% share of lost profits for each year since 2018 due to Plaintiffs' refusal and failure to lease the Townhome," "to the extent it would be greater than an award of her share of expenses."

¶ 29 Defendant then requested leave to file an amended motion for attorney fees and costs, as well as an amended motion for expenses and credits. By agreement, she was given until April 10 to do so. On April 9, she filed an "emergency motion" seeking an extension. The trial court entered an order making her amended motions due on or before April 15.

¶ 30 On April 16, defendant filed a brief in support of her motion for attorney fees, arguing she was entitled to an award for all the fees that she paid to the attorney (Lind) whom she consulted about this matter.

¶ 31 On April 18, defendant filed a combined response to plaintiffs' motion for fees, as well as an amended motion for partition expenses. In it, she claimed that she had always been willing to prepare the townhome for lease (rather than sale), but plaintiffs' refusal caused it to remain vacant for seven years. Defendant sought her share of lost profits from the failure to lease the property, which she believed was $13,500. She denied that she had caused any delay in this matter. Rather, she argued that plaintiffs' counsel had delayed the case through numerous wasteful, baseless, or inappropriate filings. She asked that plaintiffs' attorney fees should be taken from the $160,000 defendant had already tendered to buyout plaintiffs' interest.

¶ 32 Defendant also sought reimbursement of the fees she paid to her outside counsel, Lind. She asserted she interposed a "good and substantial defense" to the action pursuant to section 12 of the Heirs Property Act. *Id.* In this regard, defendant noted that she had filed motions causing the complaint to be amended multiple times, including to add William, Kathleen, and Timothy as plaintiffs and to correct the PIN number.

¶ 33 Defendant opposed plaintiffs' request for reimbursement of expenses such as real estate taxes, insurance, utilities, and homeowner association fees. Defendant reiterated her position that

she should be awarded lost profits due to plaintiffs' failure to agree to lease the townhome in the years since Evelyn's passing.

¶ 34    On April 29, 2024, plaintiffs filed a response in which they denied that defendant ever asserted a substantial defense to the partition action within the meaning of section 12 of the Heirs Property Act, as her motions were "procedural rather than substantive." Plaintiffs also reiterated that defendant "refused to sell the townhome for five years" and had undermined good faith efforts to resolve the matter.

¶ 35    On May 20, 2024, the court held a hearing at which it heard oral argument on the parties' pending motions regarding apportionment of attorney fees, expenses and credits. Notably, no transcript is in the record on appeal.

¶ 36    The court entered a written order in which it granted in part and denied in part the parties' requests. In doing so, the court commented:

> "[T]he actions of Defendant [in] relation to this litigation were counterproductive and calculated to cause harassment and delay. Defendants' conduct was mean-spirited and vindictive *** and not conducive to amicably resolving the case, knowing full well that given the facts, partition would ultimately be ordered. Defendant insisted that Plaintiffs dot every 'I' and cross every 'T' and balked at every request for additional time made by Plaintiffs, which of course is her right. Yet, Defendant cared little about delay when the 'shoe was on the other foot' when she made constant and unreasonable requests for delay."

¶ 37    The court proceeded to grant plaintiffs' motion for attorney fees in part. The court found that plaintiffs' request for an award of $20,076.88 in attorney fees and costs was reasonable. The court determined that a "fair and just apportionment of attorneys' fees and costs" among the parties was for "40% of same to be chargeable to the Defendant and 60% chargeable to the Plaintiffs *pro rata*."

¶ 38    In the same order, the court granted in part defendant's motion for attorney fees related to services provided to her by attorney Lind. Although defendant requested $5,256.25, the court awarded defendant $1,500.

¶ 39    Separately, the court granted plaintiffs' motion for partition expenses in part and denied it in part. It found that plaintiffs Kevin and William were entitled to reimbursement for repairs to the property totaling $19,666.54, to be paid "from the bank account customarily used by the parties to pay such expenses."

¶ 40    Separately, the trial court partially granted defendant's motion for expense and credits, finding she was entitled to a credit for the "2nd Installment of the 2023 year real estate property taxes and the 2024 property taxes attributable to the period of January 1, 2024 through March 7, 2024." The trial court otherwise denied defendant's request for expenses.

¶ 41    On June 4, 2024, defendant filed a timely motion to reconsider. In it, she asked that the court vacate the paragraph in the May 20, 2024, order that negatively characterized her conduct in the litigation. She maintained that any delay in this case was "caused by the Plaintiffs' counsel and his wasteful actions," not by her. In the same submission as the motion to reconsider, defendant made a "motion to strike" any language in filings by plaintiffs' counsel where he suggested she was "obstinate, vindictive, irrational and chaotic" or where he otherwise "disparaged" her.

¶ 42     Defendant separately averred that plaintiffs' counsel was "entitled to no more than half of the approximately $20,0000 in fees" and costs that had been awarded, and that in any event, she should not be responsible for any of plaintiffs' attorney fees. On the other hand, defendant asserted she should be reimbursed for the entirety of the fees she paid to attorney Lind. Defendant also asked that plaintiffs be ordered to pay her "the lost income that she would have received from leasing the townhome" from early 2022 through February 2024, when she bought out plaintiffs' interests.

¶ 43     The record reflects that the court heard oral argument on defendant's motion to reconsider and motion to strike, although no transcript is in the appellate record. On June 6, 2024, the court issued an order denying the motion to reconsider and motion to strike "for the reasons stated more fully on the record in open court." The court noted that it "stands firmly by its observations and findings and why equity and justice requires the allocations and assessments made by the Court."

¶ 44     The same order clarified that, given the court's prior apportionment of the parties' respective liability for attorney fees and expenses (including credits awarded to defendant for real estate taxes), the final calculation of defendant's net liability to plaintiffs was $2,753.43. It directed that defendant pay that amount.

¶ 45     The court specified there was no just reason to delay the order's enforcement or appeal. Defendant filed a timely notice of appeal.

¶ 46                                    ANALYSIS

¶ 47     On appeal, defendant challenges the court's apportionment of costs and attorney fees among the parties that resulted in her owing $2,753.43. With respect to the award of plaintiffs' attorney fees, she asserts the court erred when it found that $19,110 was a reasonable amount of fees. She also avers the court erred in finding that she was liable for 40% of the plaintiffs' attorney

fees and costs. She maintains that, considering "justice and equity factors," she should not have to pay any of plaintiffs' fees.

¶ 48    Defendant also maintains that she was entitled to recover from plaintiffs the full amount of fees that she paid to the attorney she consulted, (not just $1,500) because she raised "good and substantial defenses" to the partition action.

¶ 49    Separate from attorney fees, defendant maintains she was entitled to lost profits and the 2017 tax credit. Finally, she also asserts error, insofar as the trial court denied her motion to strike portions of plaintiffs' submissions that negatively characterized her. For the following reasons, we find these arguments without merit and affirm.

¶ 50                    Governing Statute and Standard of Review

¶ 51    In order to assess the merits, it is helpful to review the background of the Heirs Property Act, which was enacted in 2019 (Pub. Act 101-520 (eff. Aug. 23, 2019)), and its relationship to article XVII of the Code of Civil Procedure (735 ILCS 5/art. XVII (West 2022)), which otherwise governs partition actions not covered by the Heirs Property Act.

¶ 52    As explained in a 2023 article from the Illinois State Bar Association (ISBA), the Heirs Property Act served "as an add on to the existing Code of Civil Procedure Partition Actions offer[ing] enhanced due process protections for heirs of real property in Illinois to protect the value of inherited real property." Michael J. Fleck, *The Illinois Uniform Partition of Heirs Property Act*, Trs. & Ests. (Ill. State Bar Ass'n, Springfield, Ill.), April 2023, at 4, https://www.isba.org/sites/default/files/sections/trustsandestates/newsletter/Trusts%20and%20Es tates%20April%202023.pdf [https://perma.cc/T85S-9FTY].

¶ 53    Generally, partition actions are governed by article XVII of the Code of Civil Procedure (735 ILCS 5/art. XVII (West 2022)). Under article XVII, when lands are held in joint tenancy or

in common, "any one or more of the persons interested therein may compel a partition thereof." *Id.* § 17-101. Prior to the Heirs Property Act, heirs who disagreed on whether to keep or sell inherited real estate would be required to seek relief under article XVII. As explained by the ISBA article, "This could often lead to unfortunate results for families of inherited property" because "[o]nly one tenant in common c[ould] force partition or sale. If one of the heirs want[ed] out or s[old] their interest to a third-party speculator, that one interest could force the partition action." Fleck, *supra*, at 2.

¶ 54　　　　In order to "provide protections and mechanisms for heirs who find themselves in the position of having to deal with the potential loss of inherited property" (*id.*), in 2019, the legislature enacted the Heirs Property Act, which "provides due process protections, such as (1) notice, (2) appraisal, (3) right of first refusal, and (4) if a sale is ultimately required, then a court supervised sale." *Id.*

¶ 55　　　　That is, the Heirs Property Act "supplements Article XVII of the Code of Civil Procedure," and if a partition action falls within its scope, the Heirs Property Act "replaces provisions of Article XVII of the Code of Civil Procedure that are inconsistent with" the Heirs Property Act. 755 ILCS 75/3 (West 2022). If the court in a partition action determines that the property at issue is "heirs property," then the Heirs Property Act applies unless all cotenants otherwise agree. *Id.* "Heirs property" is defined to mean real property held in tenancy in common which satisfies all of the following requirements:

> "(A) there is no agreement in a record binding all the
>
> cotenants which governs the partition of the property;
>
> (B) one or more of the cotenants acquired title from a relative
>
> or, if a cotenant is an entity, from a relative of a beneficiary,

shareholder, partner, or member of the entity, whether such relative is living or deceased; and

(C) Any of the following applies:

(i) 20 percent or more of the interests are held by cotenants who are relatives;

(ii) 20 percent or more of the interests are held by a cotenant who acquired title from a relative, whether living or deceased; or

(iii) 20 percent or more of the cotenants are relatives." *Id.* § 2.

¶ 56    In this appeal, defendant does not challenge the applicability of the Heirs Property Act or her buyout of her siblings' interests in the townhome for $160,000. Rather, she challenges the trial court's apportionment of costs, including attorney fees. The parties agree that the governing provision is section 12 of the Heirs Property Act, which states:

"In all proceedings for the partition of heirs property, the court shall apportion the costs of the proceedings, including a reasonable fee for the plaintiff's attorney, among the parties in interest in the action, as the court deems just and equitable. In determining the just and equitable apportionment of the costs and attorney's fees, the court may consider, among other things, the good faith attempt of the parties to agree prior to the initiation of the complaint. If any defendant interposes a good and substantial defense to the complaint, the party or parties making such substantial defense shall

-14-

recover their costs against the plaintiff according to justice and equity." *Id.* § 12.

¶ 57    Notably, the parties disagree as to the standard of review concerning a trial court's apportionment under section 12. Defendant asserts (without citing any case law) that all of the trial court's challenged rulings are subject to *de novo* review, whereas plaintiffs maintain that such rulings may be reversed only if the trial court abused its discretion.

¶ 58    We acknowledge there are few reported decisions interpreting section 12 of the Heirs Property Act. Nonetheless, we think it is clear that abuse of discretion is the proper standard. This is apparent from the statutory language that the court shall apportion costs, including attorney fees "*as the court deems just and equitable*." (Emphasis added.) *Id.* This clearly expresses a legislative intent to afford the trial court discretion to determine what it believes to be "just and equitable" under the circumstances.

¶ 59    Moreover, as plaintiffs point out, article XVII of the Code of Civil Procedure contains an analogous provision regarding the equitable apportionment of costs in other partition actions:

> "Costs. In all proceedings for the partition of real estate *** the court shall apportion the costs among the parties in interest in the action, including *** a reasonable fee for plaintiff's attorney, so that each party shall pay his or her equitable portion thereof, unless the defendants, or some of them, interpose a good and substantial defense to the complaint. In such case the party or parties making such substantial defense shall recover their costs against the plaintiff according to justice and equity." 735 ILCS 5/17-125 (West 2022).

In reviewing apportionment of attorney fees under that analogous provision, this court has repeatedly applied the abuse of discretion standard. See, *e.g.*, *Bargman v. Wilson*, 407 Ill. App. 3d 656, 661 (2011) ("we cannot say that the circuit court's decision to deny John's request to apportion the fees of his retained counsel was an abuse of discretion); *Clayton v. Bradford National Bank*, 250 Ill. App. 3d 775, 784-85 (1993) ("The fixing of attorney fees and the allowance of those fees as apportioned costs are largely matters residing in the discretion of the trial court.").

¶ 60        This is consistent with the principle that " 'Generally, a trial court's decision to award attorney fees is not reversed absent an abuse of discretion.' " *Peleton, Inc. v. McGivern's Inc.*, 375 Ill. App. 3d 222, 225 (2007) (quoting *Guerrant v. Roth*, 334 Ill. App. 3d 259, 262 (2002)). "The rationale for this standard is that a party challenging a trial court's decision regarding attorney fees is actually challenging the trial court's discretion in determining what is reasonable." *Guerrant*, 334 Ill. App. 3d at 262-63 (citing *Pietrzyk v. Oak Lawn Pavilion, Inc.*, 329 Ill. App. 3d 1043, 1046 (2002)).

¶ 61        This standard is highly deferential. "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 62        With this standard in mind, we turn to the specific challenges to the trial court's apportionment of attorney fees.

¶ 63        The Trial Court Did Not Abuse Its Discretion in Determining That 40% of Plaintiffs' Attorney Fees Should Be Chargeable to Defendant

¶ 64        We first conclude that the trial court did not abuse its discretion, when it determined that it was just and equitable for defendant to be charged with 40% of plaintiffs' attorney fees.

¶ 65    Defendant urges that because the case was "strongly contested" and because she "raised good and substantial defenses" to the action, "[a]s a matter of law, Plaintiffs' attorney is not entitled to have any fees that he may be awarded charged to the Defendant; there may be no apportionment of Plaintiffs' attorney[ ] fees to the Defendant." This is contrary to the plain language of section 12 of the Heirs Property Act, which broadly gives discretion to "apportion the costs of the proceedings, including a reasonable fee for the plaintiff's attorney, among the parties in interest in the action, *as the court deems just and equitable*." (Emphasis added.) 755 ILCS 75/12 (West 2022). There is simply no language in the statute suggesting that the court is precluded from apportioning plaintiffs' attorney fees, even assuming *arguendo* the case is strongly contested and substantial defenses are raised.

¶ 66    Certainly, the court was free to consider a wide range of factors in determining whether it was "just and equitable" to apportion some of plaintiffs' fees to defendant (or vice versa). Here, it is apparent from the court's orders that it found that apportionment of 40% of plaintiff's fees to defendant was just and equitable, because defendant's conduct had excessively delayed the resolution of the case (and in turn, drove up legal fees). We cannot say this was an abuse of discretion, given the record before us.

¶ 67    To the contrary, the record shows that defendant filed numerous submissions, many of which lacked merit, repeatedly sought extensions of time, and missed deadlines for payment even after she agreed to buyout plaintiffs' interests. That is, the record bears out the court's observations that defendant's conduct was dilatory and excessively litigious, which drove up costs for all parties.

¶ 68    We acknowledge that defendant pointed out some technical mistakes in the plaintiffs' filings, which led to amendments of the complaints. Specifically, defendant pointed out that

(1) three of the siblings were named as "interested parties" in the original complaint when they should have been named as plaintiffs, (2) the original complaint did not specifically cite the Heirs Property Act, and (3) defendant found an apparent scrivener's error in the complaint's recitation of the PIN. Notwithstanding these defects, there was never any genuine dispute about the application of the Heirs Property Act, the identity of the subject property, or the fact that each sibling had an equal, 20% interest in the property.

¶ 69 The contentious manner in which defendant elected to raise these issues is consistent with the court's observations. Certainly, such technical defects could easily have been corrected by notifying plaintiffs' counsel informally to give them a chance to amend, without need for adversarial motion practice. Significantly, however, defendant (an attorney) elected to file three dispositive motions, suggesting the case should be dismissed entirely on these technicalities. This, in turn, forced plaintiffs' counsel to spend additional time on the matter.

¶ 70 As plaintiffs' brief points out, defendant's decision to file motion for summary judgment in December 2023 based on the PIN error was especially egregious and unnecessary, insofar as it came *after* defendant admitted the address of the subject property, after the court had already found no genuine issue of material fact, and several months *after defendant had filed notice of her intent to buyout out her siblings' interest in the subject property.* That is, the case was essentially resolved when defendant sought to derail it based on a typographical error. Certainly, the court could reasonably find that this represented a delay tactic on defendant's part, rather than a good faith defense.

¶ 71 We also note that, although the record reflects that the circuit court heard oral argument on several occasions, there is no transcript in our appellate record. It is well-settled that the appellant (here, defendant) has the "burden to present a sufficiently complete record" to support claims of

error. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005). "[I]n the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). "When there is a gap in the record that could have a material impact on the outcome of the case, the reviewing court will presume that the missing evidence supported the judgment of the trial court and resolve any doubts against the appellant. [Citations.]" *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 655 (2007). Insofar as this court has no access to the transcripts of argument in connection with various motions, we must presume that those transcripts supported the trial court's conclusions.

¶ 72        In affirming, we note defendant's reliance on the 1993 decision in *Clayton*, 250 Ill. App. 3d 775, but we find it distinguishable. *Clayton*, which preceded the Heirs Property Act, was a partition action concerning land owned by two sisters, plaintiff and defendant, as tenants in common by inheritance. *Id.* at 776. Significantly, plaintiff's complaint was deficient in that it "did not allege the respective interests of the parties as to the amount of their interests in the premises." *Id.* at 778. Defendant answered and raised an affirmative defense "that plaintiff had orally promised defendant that if defendant moved back to the premises in question *** plaintiff would reconvey to defendant that interest in the premises which defendant had previously conveyed to plaintiff" and that defendant had acted in reliance on that promise by making substantial improvements to the property. *Id.* After trial, the court found *inter alia*, that plaintiff had made the alleged promise of reconveyance, defendant had reasonably relied thereon, and defendant was thus entitled to an additional interest in the property. *Id.* at 779 (finding that respective interests were seven-ninths to plaintiff and two-ninths to defendant).

¶ 73    Pursuant to section 17-125 of the Code of Civil Procedure, the court apportioned some of defendant's attorney fees to plaintiff, but declined to apportion plaintiff's attorney fees, such that "plaintiff was ordered to pay them in full." *Id.* at 780. On appeal, plaintiff sought reversal of the trial court's denial of apportionment of her attorney fees.

¶ 74    This court affirmed the decision not to apportion plaintiff's attorney fees for "two reasons: her complaint did not properly set forth the rights and interests of all the parties in interest *** and defendant interposed a good and substantial defense to the partition action by setting up her claim to an additional interest by virtue of plaintiff's promise to reconvey." *Id.* at 781. The *Clayton* court explained that to award plaintiff's attorney fees,

> "It is essential that the conduct of the attorney for the party seeking partition be fair and impartial to all the parties in interest. [Citation.] Here, plaintiff did not fairly and honestly represent the interests of all the parties sought to be partitioned, and the complaint did not properly set forth all of defendant's interest in the real estate. Where it is necessary for defendant to employ counsel to protect her interest in the property, as here, where plaintiff failed to set forth defendant's right to reconveyance of a portion of the premises, apportionment of plaintiff's attorney fees is not appropriate.
>
> Furthermore, defendant interposed a good and substantial defense to the complaint. The complaint failed to allege defendant's right to reconveyance. Defendant was thereby forced to defend *** by properly setting forth her additional interest in the premises by virtue of plaintiff's promise to reconvey. It is error to apportion plaintiff's

attorney fees where the suit is strongly contested and defendant has in good faith advanced reasonable and substantial grounds on which she defended." *Id.* at 782 (citing *Jackson v. O'Connell*, 46 Ill. App. 2d 49, 53 (1964)).

¶ 75        The situation here bears no resemblance to *Clayton* or its stated reasons for denying apportionment of plaintiff's attorney fees. Whereas the plaintiff's complaint in *Clayton* did not accurately set forth the parties' respective interests in the subject property, here the plaintiffs' complaints accurately stated that the parties' mother left the property to them in equal, one-fifth shares.

¶ 76        Similarly, the defendant in *Clayton* raised a meritorious, "good and substantial" defense, *i.e.*, that she had relied on plaintiff's promise to reconvey some of defendant's interest in the property. *Id.* Defendant here claims she raised a "good and substantial defense," but the case law on that subject weighs against her.

¶ 77        " 'Where defendants interpose a substantial defense in good faith, it is sufficient to preclude apportionment of plaintiff's attorney fees ***.' " *Bargman*, 407 Ill. App. 3d at 660 (quoting *Clayton*, 250 Ill. App. 3d at 777). However, *Clayton* and other case law illustrate that a "substantial defense" is one that goes to the merits of the parties' interest in the subject property. See *Clayton* 250 Ill. App. 3d at 782 (citing *Bailey v. Bailey*, 150 Ill. App. 3d 81 (1986)). There does not appear to be much recent case law defining what is a good and substantial defense. However, in 1897, our supreme court explained that:

> "It is evident that the good and substantial defense which may be interposed, and which will prevent the allowance of the fee, is a defense of a good and substantial character. *** [W]e think it should

-21-

be construed as meaning that a defense, valid and substantial in character, made in good faith and on reasonable ground, should exempt a defendant from paying a solicitor of his adversary, not for services rendered to him, but for a hostile attack upon what he in good faith believes to be his substantial right. If the bill states the rights and interests of the parties correctly, a defense which is merely formal, frivolous or vexatious, or which is not undertaken in good faith, would not be regarded as good or substantial." *Metheny v. Bohn*, 164 Ill. 495, 501 (1897).

¶ 78 More recent case law illustrates that a substantial defense is one that potentially affects the division of the property. That is, "[w]here a defendant in a partition action denies title to the real estate involved and claims title in another fashion, the defense is considered substantial." *Bailey*, 150 Ill. App. 3d at 88-89 (explaining that an issue of will construction was a substantial defense precluding an award of attorney fees where "[t]he parties' proffered constructions directly influenced and could have changed the proposed quantity of land to be taken by each individual party"); see *Jackson*, 46 Ill. App. 2d at 53 (in a partition action, "[i]t is error to apportion the attorney's fees where the suit is strongly contested and defendants in good faith advanced reasonable and substantial grounds on which they defended").

¶ 79 On the other hand, nonsubstantial issues that do not affect the parties' respective interests are not "good and substantial" defenses. See *Lane v. Budiselich*, 17 Ill. App. 3d 914, 917 (1974) ("The assertion by defendant in her motion that the complaint was multifarious does not constitute a good and substantial defense but rather the assertion of a technical defect at most."); *Jackson*, 46 Ill. App. 2d at 53 (a "good and substantial defense" is not "merely formal, frivolous, or vexatious").

¶ 80    In this case, defendant did not raise any substantial defense going to the merits of the action. She pointed out technical pleading defects or scrivener's errors, but these were easily corrected. None of them affected the parties' actual interests in the subject property, which was never disputed. We thus reject defendant's suggestion that she raised a "good and substantial defense" that precluded apportionment of any of plaintiffs' attorney fees to her.

¶ 81    We also note but reject defendant's suggestion that numerous justice and equity factors favor her. In this portion of her brief, defendant asserts (without citing any record support) that her decision to buyout her siblings saved them significant expenses, such as a real estate commission and costs to prepare the property for a real estate listing. While this may be true, it lacks record support and, more importantly, ignores the record evidence that defendant's conduct unnecessarily prolonged the partition action from its filing in early 2022 until she finally purchased the property approximately two years later. The record supports the trial court's comments that defendant's conduct in this case increased, rather than decreased, the parties' expenses.

¶ 82    Defendant also claims (without citing any record support) that she "made a settlement offer that involved leasing the Townhome for two years that would have concluded the case within three months of the filing" of this partition action. Even if this were true, the trial court was equally entitled to rely on the undisputed evidence that, shortly before the initiation of the complaint, defendant was the only one of the five siblings who refused to list the townhome for sale. Had she done so, the action would have been avoided. See 755 ILCS 75/12 (West 2022) ("In determining the just and equitable apportionment of the costs and attorney's fees, the court may consider, among other things, the good faith attempt of the parties to agree prior to the initiation of the complaint.").

¶ 83    In short, we cannot say that the court's decision to allocate 40% of plaintiffs' attorney fees to defendant was an abuse of its statutory discretion to apportion fees as it "deems just and equitable." *Id.* While this court might not have allocated the same figure had we been sitting in the trial court's position, our standard of review asks only whether the trial court's decision was reasonable. We think it was, especially as the written record generally supports the court's findings in its orders that defendant's conduct unnecessarily prolonged the resolution of the case.

¶ 84                The Total Amount of Plaintiffs' Attorney Fees ($19,110)

Was Not Unreasonable

¶ 85    We briefly address defendant's related contention that the total amount of the plaintiffs' attorney fees approved by the court, $19,110, was unreasonable.

¶ 86    Section 12 of the Property Heirs Act permits apportionment of a "reasonable fee for the plaintiff's attorney" among the parties. *Id.* Generally, the court's application of statutory language allowing attorney fees under the facts of a given case is reviewed for an abuse of discretion. See *Forest Preserve District v. Continental Community Bank & Trust Co.*, 2017 IL App (1st) 170680, ¶ 32. "An abuse of discretion occurs when no reasonable person could take the view adopted by the circuit court." *Id.*

¶ 87    Clearly, the trial court was in the best position to assess whether the fees were reasonable, and we cannot say that its decision was an abuse of discretion.

¶ 88    Defendant does not dispute the veracity of the invoices submitted by plaintiffs' counsel. Instead, she asserts that plaintiffs should be entitled to "no more than half" of the amount awarded because plaintiffs' counsel delayed the case through "numerous wasteful, improper, baseless or inappropriate" court submissions. She reiterates her claim that she "interposed good and substantial defenses" and further claims that "she defeated Plaintiffs' case in its entirety by buying

out their interests." She also makes a novel argument that plaintiffs' counsel should be denied "any award" and that, in fact, "he owes his clients" because plaintiffs' counsel delayed the case for a year, during which the property could have earned rental income.

¶ 89    Here, we cannot say that the total amount of fees awarded was an abuse of discretion. Although there were numerous filings by both parties, the record belies defendant's claim that plaintiffs' counsel submitted wasteful or baseless filings that unnecessarily extended the case. Rather, the record supports the court's observations that it was primarily the defendant who acted in a dilatory manner, including through motions to dismiss on technical grounds such as the incorrect PIN.

¶ 90    Moreover, we again note that we are without the benefit of any court transcripts containing argument on any of the contested motions. This further weighs against us disturbing the trial court's findings.

¶ 91    The Trial Court Did Not Abuse Its Discretion In Awarding $1,500

for Defendant's Attorney Fees Instead of the Requested $5,256

¶ 92    For similar reasons to those discussed above, we decline to disturb the trial court's decision to award defendant $1,500 for fees, much less than the $5,256.25 that she requested. On this point, defendant maintains that because she raised good and substantial defenses, under section 12 of the Heirs Property Act, she is entitled to be awarded the full amount of attorney fees she incurred. We disagree because we do not find defendant raised any "good and substantial defense" within the meaning of that provision. 755 ILCS 75/12 (West 2022).

¶ 93    Section 12 of the Heirs Property Act says: "If any defendant interposes a good and substantial defense to the complaint, the party or parties making such substantial defense shall recover their costs against the plaintiff according to justice and equity." *Id.* As discussed, our case

law indicates that a "good and substantial defense" is one that potentially affects the parties' interests in the property. See *Clayton*, 250 Ill. App. 3d at 782 (finding a substantial defense where defendant set forth her additional interest in the premises by virtue of plaintiff's promise to reconvey); *Lane*, 17 Ill. App. 3d at 917 (in finding defendant did not raise a substantial defense, distinguishing cases where "genuine issues as to the nature and extent of the interests of the parties in the partition were tendered"). That is, a substantial defense must be more than a "formal, frivolous or vexatious" defense to the partition action. *Metheny*, 164 Ill. at 501; see *Lane*, 17 Ill. App. 3d at 917 (assertion of a "technical defect" is not a good and substantial defense); *Jackson*, 46 Ill. App. 2d at 53 (a "good and substantial defense" is not "merely formal, frivolous, or vexatious").

¶ 94   Given this case law, plaintiff does not identify any "good and substantial" defense that she raised pursuant to section 12 of the Heirs Property Act. At most, she raised technical defects or scrivener's errors, such as the initial failure to label all other siblings as "plaintiffs" rather than "interested parties" and the incorrect PIN. At no point did she raise any defense that could have affected the parties' respective interests in the property at issue.

¶ 95   Here, it is clear that the court exercised its discretion to award defendant only a $1,500 portion of the $5,265 she sought for fees she paid to her outside counsel for advice in this matter. We cannot say that decision was unreasonable, for the same reasons discussed with respect to the trial court's award of plaintiffs' attorney fees. The court apparently found that it would not be fair and equitable to grant defendant more than $1,500 of her requested fees, given her dilatory conduct over the course of the case. Although this court might not have reached the same conclusion, we cannot say the trial court's decision was unreasonable. We reiterate that the trial court was in a much better position to evaluate the conduct of the parties, and we lack transcripts of any hearings.

Thus, we must presume such transcripts would support the trial court's findings. See *Trapani Construction Co. v. The Elliot Group, Inc.*, 2016 IL App (1st) 143734, ¶ 32 ("[I]n the absence of a record of what occurred in the trial court, we will presume the trial court acted in conformity with the law and with sufficient factual basis."). In this regard, we note that the portion of the June 4, 2024, order addressing defendant's motion for attorney fees referenced "the reasons stated more fully on the record in open court." We also note that, as we affirm the $1,500 award of defendant's fees on this basis, we need not address the merits of defendant's claim that the trial court improperly limited her award because she was a lawyer or because the lawyer she consulted, Lind, never filed an appearance of counsel.

¶ 96   Defendant Offers No Reason to Disturb the Findings Denying Defendant Any Further Expenses or "Lost Profits"

¶ 97   Without citing any supporting portions of the record or case law, defendant asks that we "award her expenses and lost profits (lost income) for the pre-filing period" from January 1, 2018, through February 3, 2022, totaling $16,415. She also seeks more than $7,000 for "lost profits" from July 1, 2022, through March 8, 2024, the date that the judicial deed was issued. She claims she is entitled to these lost profits because defendants refused to lease the premises.

¶ 98   She also requests that we reverse the denial of her request for a credit of $3,993.74 corresponding to the 2017 tax year refund because "she obtained the refund through her own effort and research" and deposited it in a "bank account that has been used to pay all of the expenses related to the Townhome" since the parties' mother passed away.

¶ 99   We reject these requests for a simple reason: defendant fails to cite any record support for her contentions, including her calculations of the supposed losses from the failure to lease the premises. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (argument in an appellate brief must

include "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). It is not this court's role to peruse the record in search of factual support for claims of error.

¶ 100          Defendant's Motion to Strike Disparaging Portions of Plaintiffs' Submissions

¶ 101          Finally, we address defendant's request that we reverse the denial of her motion to strike, which was submitted as part of her motion for reconsideration. Defendant urges that we strike portions of plaintiffs' counsel's trial court submissions that negatively characterized her "as being obstinate, vindictive, irrational or chaotic" or that disparaged her with similar language. She urges that such characterizations are irrelevant to this case and that the record shows they are false.

¶ 102          Generally, a decision on a motion to strike is reviewed for an abuse of discretion. See *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 18.

¶ 103          We note that, given our conclusions above that the trial court did not otherwise err with respect to the apportionment of fees and expenses, it appears that any review of the ruling on the motion to strike is moot. That is, even if we were to find that the motion to strike should have been granted, it would not affect the outcome of the case, in terms of the parties' respective rights and liabilities. See *In re Barbara H.*, 183 Ill. 2d 482, 490-91 (1998) ("As a general rule, courts of review in Illinois do not decide moot questions *** or consider issues where the result will not be affected regardless of how those issues are decided.").

¶ 104          Even if the matter was not moot, we would find the record is insufficient to reverse, insofar as the court's June 6, 2024, order stated it was denying the motion for "reasons stated on the record." As discussed, this court lacks any transcript of the hearing and thus is not in position to find that the court's reasoning constituted an abuse of discretion. Although we do not necessarily condone all of the language in plaintiffs' submissions, there is no basis to reverse the denial of the

motion to strike, and in any event, it has no bearing on the ultimate disposition of the merits of the case.

¶ 105                                                   CONCLUSION

¶ 106        In summary, we affirm the orders of the circuit court that found defendant liable for a total of $2,753.43 to plaintiffs, after finding she was liable for 40% of plaintiffs' attorney fees but was entitled to a credit of $1,500 for her attorney fees and other credits. We do not find any abuse of discretion by the trial court with respect to its apportionment of fees and expenses pursuant to section 12 of the Heirs Property Act. 755 ILCS 75/12 (West 2022).

¶ 107        For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 108        Affirmed.

***McDunn v. McDunn*, 2026 IL App (1st) 241419**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2022-CH-00959; the Hon. Thaddeus L. Wilson, Judge, presiding. |
| **Attorneys for Appellant:** | Susan McDunn, of Chicago, appellant *pro se*. |
| **Attorneys for Appellee:** | Michael H. Wendt and Kevin L. Nelson, of Earl Nelson Company Ltd., of Geneva, for appellees. |